Eastern District of Kentucky
FILED

OCT 2 5 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-684-GWU

OMA C. AMOS,                                                     PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?
       If yes, the claimant is not disabled. If no, proceed to Step 2.
       See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical
       or mental impairment(s)? If yes, proceed to Step 3. If no, the
       claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
       impairment(s) significantly limiting the claimant's physical or
       mental ability to do basic work activities? If yes, proceed to

1

Amos

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

Amos

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Amos

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Amos

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Amos

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

Amos

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley  v. Secretary of Health and Human</u>

<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Amos suffered from situational

anxiety with depression and obesity. (Tr. 24). He found that the plaintiff was only

able to perform a limited range of medium level work and could, therefore, not

perform any of her past relevant work. (<u>Id</u>.). However, he determined that the

plaintiff could perform significant numbers of jobs as per vocational expert (VE)

testimony. (Tr. 23, 25).

The VE was asked to assume (1) a limitation to no more than medium work

exertionally and (2) having the mental capacity for simple instructions and tasks in

two hour segments in a non-public setting. (Tr. 254-255). The VE named alternative

jobs at the medium and light levels which would be compatible. (Tr. 256-257).

The only physical limitation was a restriction to medium level work. The

plaintiff had originally alleged disability, in part, due to cardiovascular problems and

musculoskeletal pain.(Tr. 65, 74, 75, 83, 93, 101). An old MRI from 1999 had been

Amos

normal, but she seemed to have back strain at the time. (Tr. 116). As of the time
of a late 2003 consultative physical examination, blood pressure was 139/105 but
heart sounds were normal, the extremities showed no evidence of clubbing or
edema and vision was 20/20 (Tr. 124). The consultative examiner noted a normal
gain, station, motor strength in the extremities, knee squat, gross manipulation, grip
strength, and flexion/extension of the lumbar spine. (Id.). He opined that the plaintiff
had the ability to perform activities involving lifting, carrying, standing, moving about,
sitting and handling objects as she had a normal routine physical examination[1] and
denied symptoms of chest pain (Tr. 126).

The plaintiff sought treatment through Mary Breckinridge Healthcare during
the period from May, 1999 (seven months before the alleged onset) onward. In
1999, she complained of headaches, but a CT of the head was normal. (Tr. 169,
170). Constant neck pain was the complaint heard during an April, 2002 office visit
(Tr. 159), but x-rays were generally unremarkable (Tr. 160) and no specific physical
examination findings other than muscle spasm were mentioned (Tr. 157).

The plaintiff also went to the Dr. Anne Wasson Rural Health Center which,
noting unidentified signs of "severe arthritis of the weight bearing extremities,"

---

[1]The doctor evidently based his opinion solely upon the physical examination as
he evidently had no access to medical records submitted subsequently which showed
that the plaintiff had been treated for musculoskeletal pain in 2002 (e.g., Tr. 156-158),
unlike the doctor's statement that she had not seen a physician in three years (Tr. 125).

Amos

referred her to Dr. Jaya Pampati in 2005. (Tr. 206). Pampati recorded information such as a weight of 261 with a height of 67 inches and a blood pressure of 118/72 and indicated that there were normal heart sounds (Tr. 208), normal motor strength, tenderness, mild restriction of movement of the lumbar spine, minimal joint line tenderness of the knee joints with crepitation and range of motion, and various tender points; fibromyalgia with possible underlying mild arthritis was the diagnostic impression. (Tr. 209). He cited no specific physical function limitations.

Given the lack of physical restrictions mentioned by any examining source, the restriction to medium exertional capacity by the ALJ was somewhat gratuitous. Additionally, the plaintiff did not appear to be on regular prescription pain medication despite her complaints of disabling pain. (Tr. 104, 109, 123). Thus, the assessment of the plaintiff's physical functions and pain were adequate.

The mental restrictions were also adequate.

This conclusion is reached largely based on information from treating sources. The Mary Breckinridge Healthcare staff, who treated the plaintiff for anxiety (Tr. 153, 155, 165) did not list any restrictions directly attributable to the condition; one nurse in 1999 did cite possible side effects, possibly of Paxil (Tr. 165), but Amos was apparently not on that medication later (Tr. 197, 239) and the plaintiff complained of no side effects of her medication at the administrative hearing (Tr. 240). More significantly, the Comprehensive Care Center staff progress notes referred to the

9

Amos

plaintiff consistently as alert, appropriate, pleasant and either clean or well-groomed (Tr. 194, 195, 196) and, in the first session, she was described by a social worker as oriented, alert, friendly, cooperative, reliable, neat, with a full affect, normal psychomotor activity, clear and coherent speech and estimated average intelligence (Tr. 199). A GAF of 70 to 75 was noted on May 19th (Tr. 197), consistent with slight to mild symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV); this score, from a treating source, is entitled to greater weight than the GAF of 55 cited by the one-time examiner, which the plaintiff cites in her brief.

The decision will be affirmed.

This the 25 day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE